UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SUMMIT ASSETS, LLC and
JEFFREY HYDE,      No. 11-12327

   Plaintiffs,      District Judge Arthur J. Tarnow

v.      Magistrate Judge R. Steven Whalen

WILLIAM JOHN O'MALLEY,

   Defendant.
                    /

## REPORT AND RECOMMENDATION

  This is a breach of contract action based on diversity jurisdiction. Before the Court is Plaintiffs' Motion for Summary Judgment [Doc. #40], which has been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons discussed below, I recommend that the motion be DENIED.

### I. FACTS

  Plaintiffs allege that on or about February 28, 2007, they offered to sell an option to purchase a condominium located in Costa Rica to Defendant William John O'Malley for $300,000. *Complaint*, ¶ 8. The offer was contained in an email from Plaintiff Jeffrey Hyde to O'Malley. *Id*., Exhibit A. Plaintiffs allege that on or about April 2, 2007, Defendant accepted the offer. *Id*., ¶ 9. Defendant's acceptance is claimed to be memorialized in an email to Hyde. *Id*., Exhibit B. Plaintiffs allege that the terms of the sale were contained in an email from Defendant's Costa Rican attorney, Luis Hernandez, and provided that (a) $50,000 would be paid to Plaintiffs immediately, and (b) the remaining $250,000 would be paid to Plaintiffs in July of 2007. *Id*., ¶ 10. Subsequently, Defendant sent to Plaintiffs two payments of $25,000 each. *Id*., ¶ 11. Plaintiffs allege

that Defendant is in breach of the contract in that he has failed to pay the remaining balance of $250,000. *Id*., ¶ 12.

Defendant O'Malley asserts that he did not personally enter into a contract with Plaintiffs to purchase the condominium. Rather, he says, he was acting as the agent for Inversiones Ecomundo NFG, SA, a Costa Rican corporation that agreed to exercise a repurchase option with Plaintiffs, in the amount of $300,000. Plaintiffs' Exhibit C, which is duplicated in Defendant's Exhibit D, is the letter from attorney Hernandez to Plaintiffs. The subject line of the email states that it is "from Ecomundo lawyer." The terms set forth in this email state as follows:

> 1- WE acept (sic) you offer for $300.000 (upper case "WE" in original)
> 2- At the singing (sic) we pay $50.000 as a down payment
> 3- The balance of $250.000 will be paid at the closing in early July. (first two weeks)

Defendant concedes that he personally made two payments, totalling $50,000, to Plaintiffs, but that the payments "were personal loans to IEFNGSA (Ecomundo) for the down payments to Plaintiffs for exercise of the re-purchase option." *Defendant's Response* [Doc. #43], p.4. Defendant also acknowledges that he sent an email to Plaintiff Jeffrey Hyde on April 21, 2007, in which he stated, "I owe you $200,000 + $100,000 = $300,000." *Id*.; Plaintiffs' Exhibit D. In the same email, Defendant offered to sell an unrelated lot in the Grand Bahamas ("Lot 37"), which he claimed was worth $850,000, for $600,000 plus credit for the $300,000 owed for the Costa Rican property. Defendant stated, "You give me $600,000 cash and lot 37 is yours." *See also* Defendant's Exhibit B. Defendant has also submitted as Exhibit F a portion of a ledger sheet from the Costa Rican corporation, containing an entry for October 19, 2009 indicating "$50,000.00 Préstamo" from William O'Malley. "Préstamo" is Spanish for "loan."

Defendant has submitted his own affidavit as Exhibit C of his response. At ¶¶ 5-7,

he states as follows:

> 5. I am not the original seller of the property nor a party to the re-purchase option for the property and I am not in personal possession of the $200,000 initial deposit from the Plaintiff's (sic).
>
> 6. All financial obligations referenced in the Complaint against me are obligations of Inversiones Ecomundo FNG, SA.
>
> 7. I provided a loan to Inversiones Ecomundo FNG, SA the aggregate amount of $50,000 which was used by them to provide the Plaintiff's the down payment for exercise of the re-purchase agreement with the Plaintiffs.

## II.   STANDARD OF REVIEW

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). To prevail on a motion for summary judgment, the non-moving party must show sufficient evidence to create a genuine issue of material fact. *Klepper v. First American Bank*, 916 F.2d 337, 341-42 (6th Cir. 1990). Drawing all reasonable inferences in favor of the non-moving party, the Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celetox Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). When the "record taken as a whole could not lead a rational trier of fact to find for the nonmoving party," there is no genuine issue of material fact, and summary judgment is appropriate. *Simmons-Harris v. Zelman*, 234 F.3d 945, 951 (6th Cir. 2000).

Once the moving party in a summary judgment motion identifies portions of the record which demonstrate the absence of a genuine dispute over material facts, the opposing party may not then "rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact," but must make an affirmative evidentiary showing to defeat the motion. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989). The non-moving party must identify specific facts in affidavits, depositions or other factual material showing "evidence on which the jury could *reasonably* find for the plaintiff." *Anderson*, 477 U.S. at 252 (emphasis added). If, after sufficient opportunity for discovery, the non-moving party cannot meet that burden, summary judgment is clearly proper. *Celotex Corp.*, 477 U.S. at 322-23.

### III.   DISCUSSION

The parties are in agreement that to prove a breach of contract under Michigan law, a plaintiff must prove (1) the existence of a contract; (2) the terms of the contract; (3) the conduct constituting the breach by the defendant; and (4) damages. *Webster v. Edward D. Jones & Co., L.P.*, 197 F.3d 815, 819 (6th Cir. 1999). Nor do the parties appear to dispute the existence of a contract. Plaintiffs made a written offer (via email) to sell an option to purchase (or repurchase) property in Costa Rica. The terms of the contract were set forth in attorney Luis Hernandez' email of April 30, 2007. At least one of those terms was breached, causing damages. Specifically, the balance of $250,000 was not paid to the Plaintiffs. The issue in this case is the identity of the other party to the contract (the purchaser). Was it Defendant William O'Malley or was it Inversiones Ecomundo, the Costa Rican corporation?

Plaintiffs have certainly produced some evidence that it was Mr. O'Malley who entered into and then breached the contract. Jeffrey Hyde initially communicated his

offer to O'Malley in his February 28 2007 email, and O'Malley's acceptance could be inferred from his April 2, 2007 response, where he stated, "Done...I'll have my lawyer write up the paper work." In the same communication, he cautioned Hyde to not speak to any of the other condominium owners "as this will cause *me* to re-think the situation or even change *my* mind." (Emphasis added). In addition, O'Malley's email to Hyde dated April 21, 2007 stated "*I* owe you $200,000 + $100,000=$300,000 (emphasis added), and it was O'Malley who made the initial $50,000 payment. O'Malley's offer to substitute some unrelated property in the Bahamas also supports the theory that it was he, not Inversiones Ecomundo, that was purchasing the option.

But at the same time, there is evidence to support O'Malley's position that the purchaser was Inversiones Ecomundo, and that he was merely acting as the agent. In his email of March 20, 2007, Jeffrey Hyde discussed at length the fact that the condominium project in Costa Rica had "changed significantly since we first made our deposit 15 months ago," and rejected a proposal that they trade their unit "for a similar unit in building 2." He then proposes a "purchase [of] our unit from us to free up that space for development into a hotel...." The inference to be drawn from this communication is that Hyde is negotiating with Ecomundo (to whom he had made a deposit for the purchase of the property), not O'Malley as an individual, and that Ecomundo will benefit from the repurchase.

In addition, it was Luis Hernandez, who identified himself as the "Ecomundo lawyer" in his April 30, 2007 email, who stated, "WE accept you offer for $300,000," and who set out the terms of the agreement. Moreover, this was a proposed repurchase of the property by Ecomundo, which had originally sold to Hyde. Indeed, Hernandez' email specifically stated that "*we* are prepared to *rescind your contract*, under the following

conditions...." (Emphasis added).  The contract referred to was presumably with Ecomundo, not O'Malley.

Mr. O'Malley states that the $50,000 he paid to Plaintiffs was in fact a loan to Ecomundo. In support, he offers a ledger sheet from Ecomundo showing a loan ("préstamo") from William O'Malley in the amount of $50,000, deposited on October 19, 2009.  Plaintiffs understandably view this with some suspicion, since the entry is more that two years after O'Malley tendered the funds to them. It is also a year and a half before this lawsuit was commenced. In any event, the import of the timing of the ledger entry is more properly addressed to the trier of fact.

In summary, there are disputed questions of material fact in this case, such that a rational trier of fact, looking at the evidence as a whole, could reasonably find in favor of the Defendant.[1] The evidence is not "so one-sided that one party must prevail as a matter of law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 251-52.

### IV.   CONCLUSION

For these reasons, I recommend that Plaintiffs' Motion for Summary Judgment [Doc. #40] be DENIED.

Any objections to this  Report and Recommendation must be filed  within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D.

---

[1] Plaintiffs reference Mr. O'Malley's previous intemperate comments and uncooperative behavior as additional support for their motion. They also state that O'Malley has failed to comply with discovery requests. As to O'Malley's prior conduct, which occurred before he had an attorney, I have already sanctioned him in the amount of $500, in lieu of recommending a default judgment. *See Opinion and Order*, Doc. #39. This is water under the bridge. Concerning unfulfilled discovery requests for information from Ecomundo, O'Malley states that in effect, he does not have possession of the documents and cannot obtain them from Hernandez or Ecomundo. In any event, this matter would be more appropriately  addressed in a discovery motion under Rule 37, not a summary judgment motion under Rule 56.

Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: February 26, 2014  s/R. Steven Whalen
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

I hereby certify that a copy of the foregoing document was sent to parties of record on February 26, 2014, electronically and/or by U.S. mail.

s/Michael Williams
Case Manager for the
Honorable R. Steven Whalen